UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| THERESA RAYFORD, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 2:18-CV-333 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Theresa Rayford appeals the Social Security Administration's decision to deny her application for supplemental security income disability benefits. Rayford suffers from several medical issues including obesity, hypertension, breast cancer, and transient ischemic attack (a stroke that only lasts a few minutes). [Tr. 17, 220.][1] An administrative law judge found that Rayford was not disabled within the meaning of the Social Security Act and that she had the residual functional capacity (RFC) to perform light work with some restrictions.

Rayford challenges the ALJ's decision on three grounds: her mental limitations were not properly evaluated; the ALJ erred in evaluating the medical opinion evidence; and the ALJ erred in evaluating her subjective allegations, or credibility. Because I find

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 8.

the ALJ's analysis of the medical opinion evidence is flawed, I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

## Discussion

In looking at the legal framework, my role is not to determine from scratch whether or not Rayford is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not particularly demanding. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there has to be more than a "scintilla" of evidence. *Id.* So in conducting my review, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

The ALJ found that Rayford had the severe impairments of obesity, hypertension, breast cancer, transient ischemic attack, adjustment disorder with

anxiety, and substance use disorder. [Tr. 17.] She determined that Rayford had the RFC:

> to perform light work as defined in 20 CFR 416.967(b) except no climbing ladders, ropes, or scaffolding; occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; no concentrated exposure to hazards, defined as work at unprotected heights; and the work should involve only simple instructions, routine, repetitive tasks, and no more than occasional changes in the workplace setting.

[Tr. 19-20.]

In analyzing whether this RFC is proper, my focus will be on the ALJ's handling of the examining source opinion of Dr. Amer S. Sidani, Rayford's treating oncologist. First, let's briefly review the medical evidence in the record, concentrating on the evidence relating to Rayford's physical issues (and not psychological), since this largely relates to the analysis of Dr. Sidani's opinion.

The first medical event in the record is a controversial one. From June 21-23, 2014, Rayford was in the hospital for "altered mental status" after complaints of slurred speech and trouble speaking and not responding accordingly. [Tr. 299, 325.] Although Rayford and her counsel refer to this event as a stroke, she was not actually diagnosed with a stroke for this incident - her speech returned to normal in the emergency room and testing showed that she was intoxicated with alcohol. [Tr. 299, 330, 333, 338.] An MRI revealed "the patient has an old stroke" but the staff specifically "rule[d] out new onset of stroke." [Tr. 332, 334.] Rayford was diagnosed with dysarthria and anemia, and she was discharged after a few days in the hospital. [Tr. 299-300.]

3

On February 28, 2015, state agency consultative examiner Dr. Jao recorded that Rayford had a limited ability to bend and stoop, frequent dizziness, headaches, blurred vision, a slight stutter, change in mood, memory loss, memory problems, poor concentration, obesity, abnormal coordination, unsteady-walk, an ataxic gait, was unable to walk heel to toe tandemly, and had difficulty standing from a sitting position, stooping, squatting, and getting on and off the examination table. [Tr. 384-86.] Rayford had reduced strength in her upper and lower extremities, and her strength was rated 3 out of 5, her reflexes were rated at 2/4, but the range of motion was normal throughout her extremities. [Tr. 386-87.]

On March 2, 2015, state agency physician Dr. Sands reviewed the existing medical evidence, including Dr. Jao's report. [Tr. 85.] Dr. Sands opined Rayford had the ability to perform activities consistent with light work (as defined at 20 C.F.R. § 416.967(b)), with only occasional balancing, stooping, kneeling, crouching, crawling; only occasional climbing of ramps/stairs; no climbing of ropes/ladders/scaffolds; and the avoidance of concentrated exposure to unprotected heights. [Tr. 83-85.] The ALJ gave this opinion "great weight," even though acknowledging that the medical record was developed after this opinion (which is an issue I'll discuss later). [Tr. 23.]

The state agency physician, Dr. Corcoran, reviewed the available evidence on July 6, 2015. [Tr. 97.] Dr. Corcoran agreed with Dr. Sands' opinion regarding Rayford's physical functional limitations. [Tr. 95-99.] Again, the ALJ gave this great weight. [Tr. 23.]

4

Rayford was hospitalized again in August 2015 for 2 days, complaining of blurred vision, mild headache, and difficulty ambulating for two to three weeks. [Tr. 539.] Her history was described in the medical records as "[h]ad an old CVA without any residual deficit." [*Id.*] A CT scan showed "cortical and subcortical infarcts which appear old." [Tr. 521.] She had hypertension and was kept on bedrest. [Tr. 539.] She was discharged with instructions to eat a low fat, low cholesterol, heart healthy diet. [Tr. 540.]

Following a mammogram, Rayford was diagnosed with breast cancer in October 2015. [Tr. 425, 460-63.] She had a lumpectomy on October 28, 2015, and was then treated with medications and chemotherapy by Dr. Sidani starting in February 2016. [Tr. 723-24, 844-45.] Dr. Sidani also diagnosed Rayford with hypertension and history of stroke. [Tr. 656, 658.]

The heart of the dispute for the purpose of this opinion is Dr. Sidani's residual functional capacity assessment of Rayford, which he completed on December 6, 2016. [Tr. 802.] It is a form in which Dr. Sidani circled or checked options, and he found Rayford could only stand or walk for less than 15 minutes at a time and should not lift over 10 pounds. [*Id.*] Dr. Sidani further stated Rayford had to recline frequently, she could only stand or walk for less than 1 hour in an 8-hour workday, could lift or carry up to 10 pounds occasionally, and could not use her left hand to grasp, grip, push, pull, or perform fine manipulation for sustained, repetitive action during an 8-hour workday. [*Id.*] Additionally, on December 6, 2016, Dr. Sidani diagnosed Rayford with

5

neuropathy and fleeting pain in her right breast, and on March 9, 2017, Dr. Sidani diagnosed her with mild chemotherapy induced neuropathy. [Tr. 810, 859.]

The ALJ stated that she "appreciate[d] that Dr. Sidani is the claimant's treating oncologist. However, I do not assign this opinion controlling or even great weight. Dr. Sidani's own treatment notes do not support these limitations. Rather, his notes only indicate mild neuropathy without abnormal findings on examination." [Tr. 23.]

There are several problems with this very brief treatment of Dr. Sidani's residual capacity assessment. First, the ALJ stated she "did not assign this opinion controlling or even great weight." [Tr. 23.] So what weight, if any, did she give to the treating oncologist's opinion? "Even if the ALJ concludes that controlling weight is not called for, [s]he still must determine what weight to give the medical opinion based on factors including the length and nature of the physician-patient relationship." *Rockwell v. Saul*, No. 18-2138, 2019 WL 3739810, at *4 (7th Cir. Aug. 8, 2019). Moreover, it is by now well settled that when an ALJ recommends that the Agency deny benefits, the ALJ must "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). But when I can't tell how much weight the ALJ gave to Dr. Sidani's opinion, if any whatsoever, I also can't say that the ALJ provided a logical bridge between the medical evidence and her conclusion that Rayford is not disabled.

Second, under the regulations that apply to claims filed before March 27, 2017, a treating physician's opinion is entitled to controlling weight if it is "well-supported by

6

medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence in the record.  20 C.F.R. §§404.1527(c)(2), 416.927(c)(2); s*ee also Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018).  An ALJ is free to discount the treating physician's opinion, but she must provide "good reasons" to explain the weight given to the opinion and support these reasons with evidence.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

Aside from the "good reasons" requirement, in addition, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations *require* the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion."  *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (emphasis added) (citation omitted); *Mueller v. Astrue*, 493 F. App'x 772, 776-77 (7th Cir. 2012) (remanding ALJ decision that did not consider the checklist of factors); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) ("Here, the ALJ's decision indicates that she considered opinion evidence in accordance with §§ 404.1527 and 416.927. However, the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence.").  "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' [her] reasons."  *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

In this case, the ALJ largely failed to consider the required factors. Although the ALJ notes that Dr. Sidani was Rayford's treating oncologist, the ALJ fails to discuss the length and frequency of treatment by Dr. Sidani. The ALJ did not mention that Dr. Sidani administered Rayford's chemotherapy treatment, and treated her for over a year. She also did not address or mention that Dr. Sidani administered chemotherapy to Rayford on February 12, March 3, March 24, April 15, and June 17 of 2016. [Tr. 723, 754.] Additionally, the ALJ did not really consider the nature of the treatment, or the consistency or supportability of Dr. Sidani's opinion compared to other things in the record. The ALJ mentioned that she did not believe Dr. Sidani's own treatment notes supported the limitations he found, but the ALJ does not then compare Dr. Sidani's RFC with the rest of the record. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Also, I'm not sure the ALJ gives "good reasons" to discount Dr. Sidani's opinion. There are things in Dr. Sidani's treatment notes that *do* support his functional assessment, including his diagnosis of fatigue, neuropathy, hypertension, and anemia. [Tr. 730, 810, 853, 859.] Dr. Sidani's limitations are also consistent with other medical evidence in the record. For example, Rayford had reduced strength in her upper and lower extremities and scored 3 out of 5, she could only generate 4.8 kilograms of force in her right hand and 3.0 kilograms in her left hand, and Rayford testified during the hearing that she was fatigued and needed to lay down during the day. [Tr. 58-59, 386.]

Moreover, as the Seventh Circuit stated in *Rockwell*, the treating doctor's "failure to mention in his treatment notes the limitations he included in his physical capacities report does not imply that [the doctor] exaggerated in the latter." *Rockwell*, 2019 WL 3739810, at *5. Similar to *Rockwell*, no medical source in this case has opined that Dr. Sidani's limitations were inconsistent with Rayford's condition.

This is what makes Dr. Sidani's opinion so powerful in this case - Rayford was not even diagnosed with breast cancer until *after* the state consultants gave their opinions. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). In this case, I think Rayford's medical records submitted after the state agency reviews could have reasonably changed the state agency doctors' opinions.

The Seventh Circuit has found, in a similar situation, that an "ALJ's own assessment of the more recent records . . . was not justified under the circumstances of the case." *Moreno*, 882 F.3d at 729; *see also Lambert v. Berryhill,* 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (the ALJ is cautioned not to impermissibly play doctor or rely on speculation). But that is in essence what the ALJ did in this case when she failed to assign any weight to the treating oncologist, and instead determined by herself that "[t]he claimant thereafter was diagnosed with breast cancer, however, the record at the hearing level

9

does not evidence further impairment, other than some mild neuropathy, which is just being monitored by the claimant's doctors and causes no further work-related limitation." [Tr. 23.] The ALJ impermissibly evaluated this evidence on her own, without giving good reasons to discount Dr. Sidani's opinion, and without considering the required factors in the doctor/patient relationship.

On remand, the ALJ should reevaluate the opinion of treating oncologist Dr. Sidani. If the ALJ again determines that his opinion is not entitled to controlling weight, the ALJ should make sure to address the various factors set forth in 20 C.F.R. § 416.927 in assessing the weight to afford Dr. Sidani's opinion.

\* \* \*

Because I am remanding this case for the reasons stated above, I need not discuss the remaining two issues raised by Rayford - that her mental limitations were not properly evaluated, and the ALJ erred in evaluating Rayford's subjective allegations. Rayford can raise those issues directly with the ALJ on remand.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

ENTERED: September 30, 2019.

       /s/ Philip P. Simon
       PHILIP P. SIMON, JUDGE
       UNITED STATES DISTRICT COURT